Okay, we'll hear argument in our next appeal, 18-1998. In Re Infinity Headwear & Apparel. Thank you, and may it please the court. This appeal is about two issues, illogical claim construction and fabricated art, both by the board, not the examiner. Before I address those issues, I do want to point out that I personally handled the re-examination in this case, and the reason I'm bringing that up will become apparent later. But I want to emphasize, I drafted the claim amendments in view of Katz. I put together the arguments to distinguish those amended claims from Katz. I interfaced with the examiner and knew what she understood, and also put together the appeal brief to the board and knew what issues the board was being asked to review. I want to discuss what it was that we disputed with the examiner. Now, this case really is about a hood, and I think that term's pretty simple, but I don't know what a hood is. The claims themselves go into a lot of detail to make it crystal clear what the edge surface of a hood is. And that was done not in the re-examination, but in the original prosecution. The edge surface is what you think it would be, the edge where the hood transitions from the outer surface to the inner surface. It would be, if you're wearing the hood, the part that's in front of your face. The examiner understood the edge surface to be just that. In fact, she drew a picture, or she annotated a figure for us. Now, originally, I put together an annotation of Katz's figure two, which showed that Katz had an edge surface, which is what the board called a leading edge. And the examiner then said, okay, I agree with that, but then said, you forgot about the attached edge surface. And she said that this dashed line in Katz's figure two was the attached edge surface. Now, we disputed that because, well, quite frankly, Katz says absolutely nothing about the dashed line. And if you look at the figures, you'll see that there are many dashed lines. And I assume that those dashed lines represent stitching. Now, I emphasize I'm assuming that, I'm guessing, because Katz doesn't teach us. At the same time, the examiner was also assuming and guessing as to what that dashed line is. In other words, Katz doesn't anticipate these claims because Katz's dashed line can't be the edge surface. I, we've read the background, read your brief, and understand the interaction with the examiner. I, moving forward, the board then took a different approach in its understanding of Katz, right? And identified a different edge surface in Katz. So isn't that the analysis that we are supposed to, as an appellate court, be considering? And whether that's a correct analysis or not whether substantial evidence supports the board's determination? Yes, thank you for asking that question. And that's, I'll move right to that right now. So the reason I brought up initially the background is that I want to emphasize that the board created an illogical claim construction for the first time in the decision on appeal. And fabricated art. And I emphasize art, not prior art. I, my understanding is that if the board were to have entered a new ground of rejection and not identified it as such, that it would be incumbent on you to let the board know, hey, I think you've got a new ground of rejection. I want to have an opportunity for further prosecution. But that doesn't seem, it's one option that you had available to you. But you don't seem to be asking for that form of relief, either, you didn't ask the board for that, and nor do you seem to be asking us for that form of relief. Do I understand that correctly? That is true. And I think it is an interesting question because is it a new grounds of rejection? The, they applied the exact same art to, they affirmed the examiner. And they even made the argument that their position didn't disagree with the examiner. So it didn't seem to make a lot of sense to say, to designate that as a new ground of rejection because the board didn't say it was. Just for future reference, we do have some case law that talks about when things are new grounds of rejection and when they're not. I'm not saying that this is a new ground of rejection because I didn't analyze that because no one asked me to. But we do have some case law on that. And we have had cases where the board didn't identify something as a new ground of rejection and then an appellant comes up here and asks for that form of relief and we have granted it. But nonetheless, so it's not a new ground of rejection but it is a different view of what the edge could be. Why is that view incorrect? Yeah, thank you for that. The reason why it's an illogical claim construction is, well, first of all, it, there's two ways to look at this. And I mentioned both of them. It's either an illogical claim construction or fabricated art, or both. I'm gonna interrupt you again, I'm sorry. You keep on calling it a illogical claim construction but do you actually dispute the board's claim construction or do you dispute how the board has said that the claim reads on cats? It's a different question. It is and I think the answer to that is that the only way to understand how the board construed the claims is by seeing how they applied the claims to cats. So what I mean by illogical is they have, basically their claim construction is that the edge surface can be any arbitrary line on the outer surface of the hood. Because it's really indisputable that the zipper on cats' hood is on the outside of the hood. There's really no dispute there. I believe the board even acknowledges that. My understanding of what the board is saying is that the zipper for the monkey's torso defines what you would call the back portion of the hood. But what the board is saying for purposes of this rejection defines an interior that can serve as a hood. The interior of the monkey, you wear the interior of the monkey on your head and that's a hood. Even though the cat's prior art reference also has what I'll call this extra flap that could extend out from the monkey's stomach so that you could use both that flap and the interior of the monkey together as a hood. So I'll call like, you've got a hood, there's like zone one of the hood and then zone two of the hood. And for you, both zone one and zone two are what cats is talking about as being cats' hood. And the board is just trying to say, well, zone one of the hood in cats itself can serve as a hood. And so therefore that limitation is met by cats. And now the zipper is on that claimed edge that you're referring to and the zipper itself is a fastener. Okay. Thank you. And I think your analysis confirms why I'm saying it's illogical and then also I'm saying they've fabricated art to support that. But I guess your point must be that it's an unreasonable reading of cats. It lacks substantial evidence to say that the interior of the monkey can be the hood. Actually, no. Let's step back and do the claim construction because the claims say that the edge surface defines the, it's, and let me just read the claims. I'm sorry, let me turn to them real quick. So the way the claim has been defined, we have the hood. There's an edge surface forming a continuous edge surface and defining an opening of the hood. The edge surface comprising an attached surface coupled to the perimeter of the blanket and a detached surface. The inner and edge surfaces of the hood further defining an interior volume of the hood. So the way that I characterize that is  from being outside the hood to inside the hood. Right? Well, no matter how you look at cats, if you go from one side of the zipper to the other, you don't go inside to outside or vice versa. You're always on the outside of the hood. That's not a claim construction issue, though. It's an entry issue. I mean, can you point to any place in the board's decision where it construed the claim explicitly that you disagree with? You're talking about its application of that claim language to the prior art. I would say that they read limitations out of the claim. It views the prior art differently than you. Only because it read limitations out of the claim. So the limitation you're saying that specifically among perhaps others that was read out is defining an opening of the hood? Yes. The zipper does not define an opening of cats' hood. And so the only way that they could have reached the conclusion that they reached is by ignoring that limitation. Or the other way to look at it is, okay, let's say you cut cats' hood off, which I think is what the board is really saying here. They could take cats, modify it by cutting the hood, 14, off so that all you have is a monkey. And then they say, okay, there's your hood. Okay, but that's fabricated art. That's not what cats teaches. I guess, as I understand the board, they're saying that you can wear the monkey on your head and just the monkey on your head by tucking the front flap into the monkey's tummy. And now you can wear the monkey. Okay, even with that interpretation, it doesn't change the fact that the edge surface of cats' hood is still there. I mean, you tucked it in, but it's still there. Yeah, but now the zipper, that part of the hood is no longer being used as a hood. The part that's being used as a hood is just the body of the monkey and the zipper goes around all of that. So that defines the opening. You don't agree with this reading of cats, but to me, this seems like a substantial evidence issue that if a reasonable person would conclude from looking at this, that that's a conclusion you could reach, even if it's not one that you'd reach or I'd reach, that's enough to affirm the board's decision, isn't it? I would respectfully disagree, because again, the only way you get there is if the board reads out limitations. I really don't understand that argument at all. The board has applied the claim meaning to require a zipper around the outer edge of the hood. That's what you want, right? That's the claim construction you want. If the board has looked at cats and said, you tuck hood 14 back in and you're left still with a hood with a zipper around it, then that's the same construction. You just disagree with the factual reading of this cat's reference. I think then that goes into the question of how do you construe hood? Because let's be clear, the monkey isn't the hood. The hood is the hood. Well, the board said that's not a construction issue. That's a factual issue, whether the monkey is a hood or not. Do you agree that the monkey is part of the hood at least? You said that the monkey is not the hood. I think it's maybe your position that the hood includes element 14 plus the portion 20 that constitutes the part of the monkey's body. I'm looking at figure one. Yeah. The cat says that the toy portion, the monkey, forms the back portion of the hood. So it at least includes, you agree that it's at least part of the hood? It's attached to the hood, yes. So if you've got a fussy kid that doesn't want something to come all the way over the top of his head, shoves the 14 part back into the body of the monkey but still pulls it up over, is that a hood or not? I don't know. Cat certainly doesn't teach us that. Or the board said you can do that with cats and that's still a hood. That's a factual finding. Is it supported by substantial evidence? Why wouldn't that be a hood? Isn't a hood something you pull up over your head? Even if it is a hood, the claim construction issue is again, what's the edge surface? The edge surface has to be. And when you push the hood, the 14 part back, the edge surface in cats becomes the outside part of the thing that's being used for a hood and it's got a zipper around it. Even when you push it back, it still doesn't find the interior volume of the hood. You just change the shape of the hood. I think that's all factual. Okay, let's hear from the other side and we'll reserve some time for you on rebuttal. Go ahead. May it please the court. I think going to the issue of. I think your friend is saying, even if you push 14 back into the body of the thing, it's still part of the hood. Therefore, cats can't be invalidating art. And therefore, there's no substantial evidence. I agree, that seems to be his position. But I think that what the board found was that the trunk of the monkey item is 20 or 21 going to the zipper without looking at 14 can still be a hood. And I think turning to the specification of the 544 patent. It's a little bit of an uncomfortable thing for us though, because Katz himself is describing what he regards as the hood as being the combination of the monkey stomach and the forward flap that extends out of the monkey. And that whole thing is the hood. And then you can see it nicely illustrated in Katz's figures. So basically what the board is doing is essentially projecting what Katz himself is describing as the hood and looking at a component of what Katz describes as a hood and identifying that, component as being the hood when really Katz himself would never contemplate that little section as being a hood. Well, I think again, it helps looking at the 544 patent specification to see how they talk about what a hood is. And if you look at, I'm on appendix page 26, column one, or starting around line 42, it's talking about the attached hood having an opening defining an internal cavity where the blanket is stowed into the internal cavity to provide a stuffed toy. And then if you look at the next page, appendix page 27, column three, starting at line 65, it says that hood generally comprises an opening defining an interior volume or interior cavity shaped and configured to receive a portion of the user's head. So if you look at those two passages, what it tells you is that a hood has to have an opening or cavity to receive a portion of the user's head and it also tells you that the hood is the part where the blanket is stuffed into. Now, if we go to turn to Katz, this is what the board was- The experiment blanket in this patent specification encompasses jackets, right? Correct, correct. So if you turn to Katz, you look at item, the monkey going up to the zipper and stopping at the zipper, that has an opening or cavity designed to receive a portion of a user's head. And that's where the hooded sweatshirt is stuffed into. Therefore, it meets the meager requirements of a hood. And I- Can I ask you something? Sure. You said something about an opening for the user's head. But I was reading the board's decision, you know, that the claim says it has a continuous edge surface and that the edge surface defines an opening of the hood. And what I thought they were saying is that it doesn't have to be the opening for the head, it could be the opening for which you stuff the material into the monkey, if that makes sense. There's nothing in the claim that says exactly what that opening, defining an opening, it doesn't say a set opening or anything, it's just an opening of the hood. Well, I think it's both. I think, I mean, the specification just says that the opening has to, the hood has to define an opening to receive a portion of the user's head. It also has to define an opening to receive the blanket or sweatshirt. I think that the monkey up to the zipper does both of those. It's an opening that is designed to receive a portion of the user's head. Well, in looking at the board's analysis at page 88, it says specifically that the edge meets all the claim language and is the edge of the hood when it's in toy form, i.e. it is the edge that defines an opening as recited by the claim into which the garment is stuffed. Yeah, I mean, I think the board's not talking about the opening in terms of receiving the user's head, but it's talking about it more in receiving the blanket. But I mean, the hood still has to receive a portion of the user's head. I mean, it's still, we would acknowledge a requirement of the hood. That was just my point there. I'm not trying to say anything differently than what the board says. So, I think that regardless of this item 14 and regardless of the fact that Katz calls it a hood, I think that what the board identified as the hood is sufficient to meet all the requirements of the 544 patent and the claim, and that's sufficient to support. One of the, well, the patent owner's arguments really revolve around this claim term edge surface and all of the requirements and relationships that are identified in the claim as to the edge surface. For example, the edge surface has to be interposed between an outer surface and inner surface of the hood. And when you look at the figure where a child is wearing this Katz hoodie, you don't see the zipper as being necessarily interposed between the inner surface and outer surface of the hood. Two responses to that. The first is if you define the hood the way that the board defined it, then the zipper is the edge between the outer and inner surface because what the hood is is just the trunk of the monkey up to the zipper. So the zipper is the edge between the outside and the inside. So that's, I guess that's what I'm trying to understand. Does, do you think the board thought that the forward flap, once it's tucked into the interior of the monkey, then that flap portion defines the inner surface of the hood or do you think it's just that very material of the back portion of the hood, it has an outer surface and then it has an inner surface and the inner surface of that single piece of material is the so-called inner surface as recited in this claim. And then the flap is really something that's irrelevant to matching up the claim language to the hood. I think it's that second point where you're talking about that the flap is really irrelevant, I acknowledge the board did discuss a scenario where you can fold the flap in, but if you look at appendix page 13, this is the board's rehearing decision. It says, regardless of the position of hood 14, it is essentially irrelevant to the claims because the hood is element 20 in cats, which has its own interior and exterior. I think that's the crux of the board's decision on that. There are no further questions. Is the zipper both the fastener and the edge surface? Well, I think that the board seemed to at times call out the zipper as being the edge surface and I wasn't sure if that could be right because the claim says a fastener that extends from the edge surface. I think that the zipper is mounted on the edge surface here. So it's the surface that includes the zipper is the edge surface, the zipper itself is the fastener. What about the board's interpretation on page 88 where they say we do not interpret the claimed edge as necessarily being the leading edge? Is that supported by the plain claim language where as Judge Chen pointed out, it has to be an edge surface interposed between the outer surface and the inner surface? There's nothing in the claim about leading edge. The board leading edge doesn't appear in the claim. And like I said before, I think that if you define the hood as the monkey up to the zipper, then that edge surface is interposed between the outer and inner part of that hood. Thank you. Okay, thank you. Thank you. I wanna take another look at the claims to emphasize again, this is a claim construction issue. We pointed out that there are really six structural features of the edge surface. And the one that we really haven't discussed yet is the edge surface includes both an attached surface and a detached surface. If under the board's construction, they don't identify what, they don't construe that at all. They clearly have ignored the attached edge surface because let's say, using their fabricated version of cats, you're cutting the hood off and calling the monkey the hood. Well, where's the attached surface? Well, wouldn't the attached surface be where the zipper comes all the way down to I guess, the neck of the hood and then the seam that goes around the back of the hood would be the attached surface. Well, number one, there is no seam. Number two, it's a continuous edge surface that defines the interior volume of the hood. No matter how you look at it, there's just no edge surface if you look at just the monkey. I mean, it really is just a monkey sewn to the hood. There's no extension that goes around the back that you could call the attached surface. Again, it's illogical. It's hard to even put your finger on what it is they were thinking because, and here's where I'll go back to what the examiner was saying. The examiner understood it. She knew what the edge surface was. She drew a picture of it, right? The dispute was something entirely different. And then the board came up with this new fabricated version of CATS to match their illogical claim construction and it just doesn't make any sense. And the last thing I'll say is that if- I ask you, you are talking about claim construction and I understand your view is that I think what you're arguing is that it's a claim construction issue because you think that the only way they could have read these claims on CATS the way they have is by adopting some sort of claim construction that's inconsistent with the claim. I think that's what you're saying. But- Yes. Is there something expressly in the board's opinion where it says something about what the claim means that you disagree with? For example, on page eight where they say we interpret the claim to edge as- We do not interpret the claim to edge as necessarily being the leading edge. Do you dispute that? Are there other places in the opinion where they say what the claims mean and you disagree? Yes. I think there really is no question whatsoever that what they call the leading edge is the detached surface of our claimed edge surface. That's exactly what we define in the claims. It's the- It's interposed between the inner and the outer surface and defines the interior volume. That's what the examiner understood. So, yes, that has to be a claim construction issue because even though they didn't come right out and say we're construing the edge surfaces as being anywhere on the outside of the hood, they didn't come out and say that, but that's clearly what they interpreted that language as. Because the only way they apply CATS in the way they have is if they interpret it that way. So, yes, the claim construction issue is that they ignored a number of limitations in the claims. And ignoring claim limitations is an unreasonable claim construction. The board has to consider every limitation of the claim. That's a settled law. Got one more minute. And the last thing I'll say is, the reason I brought up that the board shifted and created this different view of everything is that had we known that we're gonna see this illogical claim construction and fabricated version of CATS during the reexamination, we could have thrown in additional claim language just to prevent it. We never had that opportunity. This was a different view of things. Now, whether or not we could have designated it as a new ground of rejection, I mean, is it a new ground of rejection? I don't know. But that doesn't change the fact that they used an improper claim construction to get the result. And on top of that, they fabricated this version of CATS that doesn't include a hood anymore. And so for both of those reasons, the decision should be reversed. Thank you. Thank you. Case is submitted.